UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| IRENE EDNA WHITSETT, | ) |
| | ) |
| Plaintiff, | )  4:23-CV-11 |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 12] for disposition and entry of a final judgment. Claimant's Disability Insurance Benefits ("DIB") application under the Social Security Act, Title II, was denied on September 28, 2022, following a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Claimant filed a Brief in Support of a Social Security Appeal [Doc. 16], the Commissioner filed a Brief in Support of the Commissioner's Decision [Doc. 22], and Claimant filed a Reply Brief [Doc. 23]. For reasons set forth below, the decision of the ALJ is affirmed.

### I.    APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow. The Court is limited to determining (1) whether substantial evidence supported the factual findings of the Administrative Law Judge ("ALJ") and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Put differently, it "must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 111 (6th Cir. 2010) (quoting *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 841 (6th Cir. 1986)).

The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). At the same time, the Court may consider any evidence in the record, regardless of whether it was cited by the ALJ. *Huizar v. Comm'r of Soc. Sec.*, 610 F. Supp. 3d 1010, 1015 (E.D. Mich. 2022) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001)). A decision supported by substantial evidence must stand, even if the evidence could also support a different decision. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing *Blakely*, 581 F.3d at 405); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021). On the other hand, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

A claimant must suffer from a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a). A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. The ALJ's

review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A full review addresses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1?

4. Considering the claimant's Residual Functional Capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work, and considering the claimant's age, education, past work experience, and RFC, do significant numbers of other jobs exist in the national economy which the claimant can perform?

*See* 20 C.F.R. § 404.1520. A claimant has the burden to establish benefits entitlement by proving the existence of a disability. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). It is the Commissioner's burden to establish a claimant's ability to work at step five. *Id.*; *see also Jones v. Berryhill*, 392 F. Supp. 3d 831, 855 (M.D. Tenn. 2019).

## II. PROCEDURAL AND FACTUAL OVERVIEW

Irene Edna Whitsett ("Claimant") filed for Social Security disability benefits and supplemental security income on January 31, 2020, alleging a disability onset date of December 1, 2019. (Tr. 15). The claims were denied initially and on reconsideration. (Tr. 3A-6A). Thereafter, Claimant requested a hearing which was then conducted via telephone by Administrative Law Judge John Case ("ALJ") on August 10, 2022. (Tr. 34). Following the hearing, the ALJ issued a decision on September 28, 2022, finding that Claimant was not disabled. (Tr. 26). In his decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024;

2. The claimant has not engaged in substantial gainful activity since December 1, 2019, the alleged onset date;

3. The claimant has the following severe impairments: hernia, thyroid cancer status-post thyroidectomy, osteoarthritis, degenerative joint disease, depression, anxiety, and posttraumatic stress disorder;

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She is limited to simple tasks. She can have no work with the public, and not more than occasional interaction with coworkers and supervisors. Further, she can have no more than occasional changes in her workplace routine;

6. The claimant is unable to perform any past relevant work;

7. The claimant was born on August 24, 1971 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age;

8. The claimant has at least a high school education;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills;

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform;

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2019, through the date of this decision.

*See* (Tr. 17-25). Claimant subsequently requested Appeals Council review, but the request was denied. (Tr. 1). As a result, the ALJ's decision ("the decision") became the final decision of the Commissioner of Social Security. *Id*.

On appeal, Claimant argues that the ALJ erred in two ways when issuing his decision. First, Claimant asserts that the ALJ erred in formulating Claimant's RFC because he failed to properly evaluate the medical opinion of consultative examiner Woodrow Wilson, M.D. [Doc. 16, p. 8]. Claimant contends that the ALJ found the opinion of Dr. Wilson persuasive but that the ultimate RFC formulation did not include certain restrictions assigned by Dr. Wilson. *Id.* at 9. Specifically, Dr. Wilson opined that in an 8-hour workday, Claimant could sit for no more than 4-6 hours, and could stand and walk for only 2-4 hours each. [Tr. Ex. 13F, p. 750]. Claimant interprets this opinion to mean that "Dr. Wilson did not report that Plaintiff is able to stand for four hours and walk for four hours; he reported that Plaintiff is able to stand for two to four hours and walk for two to four hours." [Doc. 16, p. 9]. She contends that Dr. Wilson's opinion is inconsistent with the ALJ's finding that Claimant could perform light work, because light work includes "a good deal of walking or standing." *Id.* Claimant further asserts that the ALJ did not adequately explain this inconsistency and in turn, he violated regulations requiring him to explain the supportability and consistency of Dr. Wilson's opinion. *Id.* at 10. Claimant contends that the error was not harmless because Claimant is 51 years old and does not have skills which are transferable to sedentary jobs. *Id.* at 11-12. Thus, if Claimant was limited to sedentary work, applicable regulations would direct a finding that she is disabled. *Id.* at 12.

Claimant's second argument is that the ALJ erred in failing to adequately explain why he rejected Claimant's statements about the difficulty she experienced in bending over and gripping with her left dominant hand, and the pain she has in her left ankle. *Id.* In support of this contention, Claimant points to the findings from Dr. Wilson's consultative examination in which he observed Claimant pushing herself up out of a chair, noting that she appeared to be in pain and had a short-stepped gait. *Id.* at 13. She further notes that Dr. Wilson found her to have a reduced range of motion in her right hip and spine and documented her history of arthritis and pain in various parts of the body. While Claimant points to this evidence as support for her subjective symptoms, she

further offers that "absence of evidence does not equate to evidence of absence," meaning that if the ALJ violated the regulations by failing to adequately explain his findings, the ALJ's opinion should not be affirmed merely because there is little corroborating evidence of Claimant's subjective symptoms. *Id.* at 15. Claimant asks the Court to remand the matter either for an award of benefits or for a new decision. *Id.* at 16.

In response, the Commissioner argues that substantial evidence supports the ALJ's assessment of Claimant's non-disabling physical limitations. [Doc. 22, p. 3]. The Commissioner first directs the Court to the ALJ's discussion of the opinions of consultative examiner Donita Keown, M.D., and state agency medical consultants Ok Yung Chung, M.D., and Sue Slaughterbeck, M.D., which was not addressed by Claimant in her argument. *Id.* at 5. The Commissioner contends that the opinions of these physicians are notable because they all concluded that Claimant did not have impairments in her ability to sit, stand, walk, lift, or carry. *Id.* at 4-5. The ALJ found Dr. Keown's opinion "generally persuasive" but found the opinions of Drs. Chung and Slaughterbeck only partially persuasive, because they opined that Claimant had no severe physical impairments whereas the ALJ limited Claimant to light work. *Id.* at 4-5. The Commissioner then addresses Dr. Wilson's opinion and argues that his opinion of Claimant's abilities to sit, stand, and walk, are consistent with a full range of light work. *Id.* at 5. The Commissioner notes that "the full range of light work requires 'standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday,' with sitting occurring 'intermittently during the remaining time.'" *Id.* at 5-6. Contrary to Claimant's interpretation of Dr. Wilson's opinion, the Commissioner argues that Dr. Wilson opined Claimant could stand and walk for a total of up to 8 hours in a workday, so long as Claimant was required to stand no more than 4 hours and walk no more than 4 hours in reaching the total of 8 hours. *Id.* at 6.

Additionally, the Commissioner avers that the ALJ appropriately considered Claimant's subjective symptoms in conjunction with other evidence in the record, including evidence of

Claimant's course of treatment, daily activities, and treatment records from Dr. Wilson. *Id.* at 7-8. More specifically, the Commissioner notes that Claimant did not follow up on thyroid treatment, was noted to have no manipulative or postural limitations on examination by Dr. Wilson, and continued to be very physically active. *Id.* The Commissioner asks the Court to affirm the decision of the ALJ. *Id.* at 10.

In her Reply Brief, Claimant reiterates that Dr. Wilson opined Claimant could stand for 2-4 hours and walk for 2-4 hours. [Doc. 23, p. 2]. She further points to Dr. Wilson's opinion that Claimant can sit for no more than 4-6 hours and asserts that such a finding would impact an individual's ability to perform light work. *Id.* Claimant then argues that while the ALJ mentioned some of Claimant's subjective symptoms in his decision, he did not actually explain why he rejected her testimony and declined to include certain restrictions in her RFC. *Id.* at 3-4.

In reviewing the transcript filed in this matter, the Court has reviewed and considered Claimant's medical records and will address them as necessary to fully analyze the issues raised by the parties. (Tr. Ex. 1F-17F). In evaluating those records, the Court notes that those contained in Exhibits 3F-4F, 7F-9F, 11F, and 13F-17F were generated on or after the alleged onset date and Exhibits 1F-2F, 5F-6F, 10F, and 12F contain records from before and after the alleged onset date. Additionally, the Court has reviewed and considered the opinions provided by state agency medical consultants on initial consideration and reconsideration of Claimant's applications for benefits. (Tr. Ex. 1A-2A and 7A-8A). Lastly, the Court has evaluated the hearing testimony and other filings made by Claimant regarding her condition. (Tr. 36-50; Tr. Ex. 1E-27E). Having done so, the Court will now address the errors alleged by Claimant in the context of the parties' arguments and applicable law.

### III. LEGAL ANALYSIS

The overarching issue for review is whether the ALJ's decision is supported by substantial evidence. Claimant contends that the ALJ erred in multiple ways in formulating her RFC. *See* 20

C.F.R. § 404.1520 (noting that step four of an ALJ's five question review involves formulating a claimant's residual functional capacity). While the Claimant alleges that multiple errors were committed, it is how these errors impact the ALJ's conclusion that Claimant retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) which is the primary focus. As set forth above, the Claimant argues that the ALJ reached his conclusions regarding Claimant's RFC and her ability to perform light work based on an incomplete evaluation of her physical health records.[1]

In evaluating the ALJ's decision, the Court notes that the ALJ was entitled to a "zone of choice" in determining whether Claimant was disabled if the facts could support a ruling either way. *Blakely*, 581 F.3d at 406. As such, the Court will not disturb the ALJ's decision even if the Court would have decided the matter differently so long as the ruling was rendered in compliance with applicable law and is based on substantial evidence. "Substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (internal citations omitted); *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 534 (6th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019)).

At Step 4 of the sequential evaluation process, the ALJ must make a residual functional capacity determination. *See* 20 C.F.R. § 404.1520. "Residual Functional Capacity" means "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs. ..." 20 C.F.R. § Pt. 404, Subpt. P, App. 2(c). Applicable regulations provide the following guidance for the agency when assessing a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting,

---

[1] The Court notes that the record contains evidence of Claimant's mental health impairments, but on appeal she argues that the ALJ erred in addressing her physical impairments.

> carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). In rendering a decision about a claimant's RFC, an ALJ is prohibited from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the Claimant's] medical sources." 20 C.F.R. § 404.1520c.

### a. Opinion of Woodrow Wilson M.D.

The Court will first consider whether the ALJ erred in his evaluation of Dr. Wilson's opinion. Instead of simply deferring to medical sources, an ALJ is required to consider multiple factors in evaluating the evidence including (1) supportability; (2) consistency; (3) a source's relationship with the Claimant; (4) specialization; and (5) other supporting or contradicting factors. 20 C.F.R. § 416.920c. This rule notably "reduc[es] the articulation standards required for ALJs in assessing medical source opinions." 3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:13 (2nd ed.). As other courts have observed in applying the rule, "[s]upportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citing *Pogany v. Berryhill*, No. 4:18-CV-04103-VLD, 2019 WL 2870135, at *27 n. 7 (D.S.D. July 3, 2019)) (internal quotations omitted). However, if two opinions are equally persuasive on the same issue, then the ALJ "will articulate how [he or she] considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In assessing whether a medical opinion is supportable, the focus is on the relevance of the objective medical evidence and supporting explanations upon which the opinion is based. In other words, "[t]he more relevant the objective medical evidence and supporting explanations…, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R.

9
Case 4:23-cv-00011-CRW   Document 24   Filed 02/06/24   Page 9 of 19   PageID #: 1086

§ 404.1520c(c)(1). In considering consistency, the focus is on how the opinions provided square with the overall record. Specifically, "[t]he more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 404.1520c(c)(2). When reviewing a physician's opinion for consistency with the record, an ALJ need not reproduce a list of findings if the relevant medical records are discussed earlier in the decision. *Compare Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (observing that "[n]o doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."), *with McCarter v. Berryhill*, No. 3:16-CV-385-CCS, 2018 WL 327765 (E.D. Tenn. Jan. 8, 2018) (stating that "[t]he Court observes that a discussion of the medical evidence in general is completely absent from the ALJ's decision… and finds that it is insufficient for the ALJ to conclude that an opinion is contrary to the medical evidence of record and then fail to cite which evidence is in conflict.").

Still, the reduced articulation requirements now applicable in disability cases did not relieve ALJs of their responsibility to provide clear explanations as to their reasoning. Even under these reduced articulation requirements, ALJs must "provide a coherent explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions, and otherwise explain how they considered the supportability and consistency factors as to each medical opinion." *Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *9 (E.D. Tenn. May 2, 2023) (internal citations omitted). "In other words, the ALJ must 'build an accurate and logical bridge between the evidence and the ALJ's conclusion.'" *Id.* (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021)). This logical bridge is required, in part, to permit the court to "engage in 'effective and meaningful judicial review.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 5 U.S.C. § 557(c)(3)(A) (internal quotations omitted)).

Here, Claimant has argued that the ALJ improperly considered the medical opinion of consultative examiner Dr. Wilson. On January 5, 2022, Dr. Wilson opined that Claimant (1) could "sit for four to six hours in an eight-hour day"; (2) could stand and walk for "two to four hours each"; (3) could lift up to 20 lbs occasionally, based on her own assessment; and (4) could "take care of her own activities of daily living." (Tr. Ex. 13F, p. 750). The ALJ found Dr. Wilson's opinion persuasive and offered the following evaluation:

> Additionally, I considered the opinion of consultative examiner, Woodrow Wilson, M.D. who opined that the claimant remains capable of sitting for four to six hours in an eight hour workday, standing and walking for two to four hours each, and lifting up to twenty pounds occasionally and found that this opinion was persuasive (Ex. 13F). In reaching this finding, I found that this opinion was supported by Dr. Wilson's examination of the claimant in which he noted that the claimant's gait while was short-stepped was normal and found that the claimant did exhibit a full range of motion in the elbows, wrist, and hands, with no obvious rheumatoid changes to her wrists or hands and exhibited full internal and external rotation of the hip with negative straight leg raise, and five out of five in muscle strength (Ex. 13F). Further, this view was consistent with her admitted abilities even after her thyroidectomy, as she acknowledged that she remained capable of performing numerous activities to include walking on the treadmills daily, gardening, performing household chores, and fishing (Ex. 17F/29, 31, 36, 38).

(Tr. 22-23).

After finding Dr. Wilson's opinion persuasive, the ALJ limited Claimant's RFC to light work, which includes "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10 (S.S.A), 1983-1991 Soc. Sec. Rep. Serv. 24, 1983 WL 31251, at *6. Claimant contends that Dr. Wilson's opinion is inconsistent with the requirements for light work and the ALJ did not adequately explain the discrepancy. As noted above, Dr. Wilson opined that Claimant "could sit for four to six hours in an eight-hour day, standing and walking two to four hours each." (Tr. Ex. 13F, p. 750). Claimant argues that this means Claimant can stand for 2-4 hours and walk for 2-4 hours, but Claimant cannot stand for 4 hours and walk for 4 hours because there is also the limitation for sitting. On the other hand, the Commissioner argues that Dr. Wilson's opinion means Claimant could stand

for up to 4 hours and walk for up to 4 hours, adding up to 8 hours on her feet and exceeding the 6-hour threshold for light work.

The Court finds that the Commissioner's interpretation is in keeping with applicable law which specifically provides that the limitations provided for a claimant as to sitting, standing, and walking do not have to add up to 8 hours. *See Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 596 (6th Cir. 2005) (affirming denial of disability claim and noting that an evaluating physician opined claimant could walk for six hours in an eight-hour day and sit for six hours in an eight-hour day); *Burgett v. Berryhill*, No. 1:18CV444, 2018 WL 7200440, *19 (N.D. Ohio Dec. 20, 2018), *report and recommendation adopted*, No. 1:18CV444, 2019 WL 426105 (N.D. Ohio Feb. 4, 2019) (finding no requirement that a physician's opinion must add up to an eight-hour workday and observing that "treating physicians often opine that a patient is not, in fact, capable of sitting, standing, and walking for the entirety of an 8 hour workday."). Rather, consultative examiners provide ranges of the maximum time a claimant is expected to be able to engage in each physical activity. The ranges are meant to account for different levels of activity that may be required within each exertion level. Put differently, not all light work requires the same level of walking, sitting, and standing, so to assess whether a claimant can perform a particular job, it is important to understand claimant's maximum ability to perform each of these functions.

The Court further notes that the ALJ did not simply adopt the least restrictive limitations assigned to Claimant. In fact, the ALJ specifically found less than fully persuasive those medical opinions which did not find Claimant to have any physical limitations. Specifically, Donita Keown, M.D. performed a consultative examination of Claimant and opined that she could "sit, stand, walk, lift, carry without restrictions." (Tr. Ex. 7F, p. 606). The ALJ found the opinion to be "generally persuasive", as Dr. Keown's examination of Claimant resulted in many normal findings, and the opinion was consistent with Claimant's reported daily activities. (Tr. 22). However, the ALJ did not fully adopt Dr. Keown's opinion because he found Claimant to be more

limited than Dr. Keown opined based upon the full record evidence. (Tr. 19, 22). In other words, the ALJ found Dr. Wilson's opinion, which assigned significant limitations to Claimant, to be more persuasive than Dr. Keown's, which is reflected in the ALJ's determination that Claimant should be limited to light work. Additionally, the ALJ found the opinions of state agency medical consultants Drs. Chung and Slaughterbeck to be "not fully persuasive" when they opined that Claimant had no severe impairments and no physical limitations. (Tr. 23). Instead, the ALJ noted that Claimant had a history of thyroid cancer and back pain and found her to have multiple severe impairments. (Tr. 17, 23). Though the ALJ noted that Claimant exhibited normal strength and walking abilities and continued to engage in many daily activities (Tr. 22-23), he still gave Claimant the benefit of the doubt and took her physical impairments into account when limiting her RFC to light work.

Given the above discussion of the relevant medical opinions, the Court finds that the ALJ's RFC formulation was in keeping with the limitations assigned to Claimant by Dr. Wilson. Additionally, for the reasons stated above, and in light of the record evidence, which is addressed in more detail below, the Court finds that the ALJ adequately addressed supportability and consistency. Accordingly, the Court cannot find that the ALJ erred in his treatment of Dr. Wilson's opinion.

### b. Claimant's subjective complaints

The Court will next consider whether the ALJ erred in his treatment of Claimant's subjective statements as to her ability to bend over, difficulty gripping with her dominant hand, and her left ankle pain. When considering a claimant's subjective statements about symptoms, the ALJ must consider both medical and relevant nonmedical evidence. *Thompson v. Saul*, No. 5:20-CV-00002-MAS, 2021 WL 895624, *3 (E.D. Ky. Mar. 9, 2021). If there is a discrepancy between the claimant's subjective complaints and the objective medical evidence relating to the degree of

impairment-related symptoms, the ALJ should not necessarily "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms." Social Security Ruling 16-3p. Instead, the regulations require the ALJ to consider factors relevant to the claimant's symptoms such as the claimant's daily activities; the duration, frequency, and intensity of symptoms; precipitating and aggravating factors; the type and effectiveness of any medication; and any other treatment or measures to alleviate symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Notably, the Social Security Administration no longer uses the term "credibility" when evaluating a claimant's subjective symptoms, but rather ALJs are directed to consider all evidence of record in conjunction with the above-listed factors. Social Security Ruling 16-3p. At the same time, ALJs are not required to discuss every factor in the list. *Corinne C. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1034, 2022 WL 1590818, *15 (S.D. Ohio May 19, 2022) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009)).

In this case, Claimant testified that she experiences pain in her back and joints due to a pinched nerve and arthritis. (Tr. 40). Regarding her ankle, Claimant testified that it would give out at times and cause her to fall. (Tr. 44, 46). She further stated that she could not grip anything with her left hand, which impacts her ability to function because she is left-handed. (Tr. 40). The ALJ considered Claimant's statements in rendering his decision but ultimately found "that the persistency of her complaints were not supported by the medical evidence." (Tr. 23).

i. Medication and other treatment

The ALJ first discusses Claimant's course of treatment and notes that she underwent a thyroidectomy which was necessitated by a diagnosis of papillary thyroid cancer. Following her thyroidectomy, Claimant testified that she would be taking a single dose radiation swallow to

further address the cancer but had not yet done so, noting that it was difficult for her to obtain certain treatment, including the radiation treatment due to an inability to pay. (Tr. 43-44). The Commissioner notes that Claimant did not follow up on her thyroid treatment and asserts that failure to treat medical conditions may cast doubt on a claimant's allegations of disabling pain. The Court does not find this argument persuasive given that Claimant's thyroid issues do not appear to be connected to her allegations of physical limitations.

Still, as to the three conditions which Claimant primarily places at issue, the record also is lacking in evidence that Claimant has undergone treatment to address the problems, despite having access to at least some medical services. For example, while arthritis was listed in Claimant's active problems in office treatment records from the Bedford County Health Department, the only treatment provided for her condition was prescription Ibuprofen, and Claimant consistently reported doing well with her medication regimen. (Tr. Ex. 1F, p. 451, 457, 471; 10F, p. 648, 658, 663, 677, 669; 12F, p. 720) (all exhibits documenting arthritis as an active problem on March 13, 2019). At one point, Claimant was prescribed hydrocodone and muscle relaxers after being seen for a muscle spasm in her back, (Tr. Ex. 11F, p. 702), but it appears that she did not need to continue the hydrocodone beyond this initial prescription. She later reported to Dr. Wilson during a consultative examination that she did not think her medications were helping her, but her active medications did not list any painkillers or other relevant medication other than Ibuprofen and muscle relaxers. (Tr. Ex. 13F, p. 747-48). Additionally, while she stated that her ankle gives out at times and she suffers from back pain, she also told Dr. Wilson that she has undergone no surgery, physical therapy, or other procedures. *Id.* at 747.

In making these observations, the Court has not overlooked Claimant's statements on the record that she was having difficulty obtaining treatment because of she did not have insurance. As to any condition which she was unable to treat due to lack of funds, the ALJ would not be entitled to hold the failure to treat against Claimant. Social Security Ruling 18-3p (explaining that an individual's inability to afford prescribed treatment that he or she is willing to follow constitutes good cause for failure to follow treatment); *Henry v. Comm'r of Soc. Sec.*, 973 F. Supp. 2d 796, 803 (N.D. Ohio 2013) ("A failure to pursue treatment because the claimant cannot afford it does not preclude a finding of disability."). The Court notes that there is evidence in the record that Claimant does not have health insurance and how her lack of insurance has limited her treatment options as to certain physical issues. (Tr. Ex. 6F, p. 589) (referencing Claimant's need for an orthopedic consultation to address shoulder pain); (Tr. Ex. 17F, p. 836) (reporting that Claimant did not have health insurance to address her physical health problems). However, there appears to be no evidence in the record that a lack of insurance has interfered with Claimant's ability to obtain treatment for the conditions which she claims primarily limit her physical ability to work, such as her claimed limitations in bending, difficulty grasping with her dominant hand, and her ankle pain.

  ii. <u>Duration, frequency, and intensity of symptoms</u>

While Claimant may have declined to undergo treatment for various reasons, more telling is the evidence of record showing that Claimant's symptoms were infrequent and that she did not have significant functional limitations. Throughout Claimant's treatment records, she was noted to have normal physical examinations. (Tr. Ex. 1F, p. 472, 478; 5F, p. 535, 541, 565; 6F, p. 582-83, 586-87, 588, 592; 10F, p. 677-78; 11F, p. 699, 704; 12F, p. 728, 734, 737; 15F, p. 768; 16F, p. 800-01, 809-15). With that said, there were times when Claimant reported back and knee pain and,

at one point, a limited range of motion in her back. (Tr. Ex. 1F, p. 471, 475; 5F, p. 562, 564; 10F, p. 677; 11F, p. 699, 704, 707). Claimant claims that her back pain was caused by a pinched nerve, but she underwent an X-ray and EKG which resulted in normal findings. (Tr. Ex. 5F, p. 564; 11F, p. 699). She was diagnosed with acute nontraumatic thoracic back pain, but the pain was not associated with a muscle strain or sprain, degenerative joint or disc disease, or a radiculopathy or neurological deficit. (Tr. Ex. 11F, p. 707).

Furthermore, Claimant's consultative examinations did not bear out the complaints at issue, which the ALJ noted in his decision. (Tr. 22). First, on September 1, 2020, Claimant underwent an examination with Dr. Keown and reported experiencing pain in multiple areas of the body. (Tr. Ex. 7F, p. 603). However, Dr. Keown found her pain behaviors to be "exaggeratory" because Claimant would "[scream] out in pain to her own volitional movements all while no increased heart rate or diaphoresis." *Id.* at 604. On examination, Dr. Keown reported that Claimant had full flexion and extension of her digits and full dorsiflexion but limited plantarflexion of her ankles. *Id.* Further, Claimant had a negative straight leg raise test, full grip strength and motor strength in all extremities, and normal walking and standing. *Id.* at 605.

Then on January 5, 2022, Dr. Wilson noted that Claimant was functioning slowly, used her arms to push herself out of her chair, and complained of pain in different areas of the body. (Tr. Ex. 13F, p. 748). On examination, he noted that Claimant's gait was "short stepped" but had an otherwise normal cadence. *Id.* at 749. Her tandem walk was normal, and her heel toe walk was normal, but she complained of pain. *Id.* Claimant's straight leg raise test was negative bilaterally. *Id.* She had limited range of motion in her hips, knees, and back, but she had a full range of motion in her elbows, wrists, hands, and ankles. *Id.* Even with the limitations reported by both doctors,

17
Case 4:23-cv-00011-CRW   Document 24   Filed 02/06/24   Page 17 of 19   PageID #: 1094

the examinations still did not reveal that Claimant had problems bending, walking on her ankle, or gripping with her left hand.

   iii. <u>Daily activities</u>

  Finally, the ALJ placed significant emphasis on Claimant's reported daily activities, which include housekeeping, tending to her chickens, performing yardwork, woodworking, walking 5 days a week on a treadmill for 30-40 minutes each time, and fishing. (Tr. 24). The ALJ's emphasis on these activities appears well-placed given the physical requirements that come with engaging in these activities. *See* (Tr. Ex. 8F, p. 611; 17F, p. 838) (reporting that Claimant does yardwork and prefers to use a push mower rather than a riding mower); (Tr. Ex. 8F, p. 621, 623; 17F, p. 831, 856) (reporting that Claimant enjoys woodworking and fishing); (Tr. Ex. 17F, p. 845) (reporting that Claimant remains active with housekeeping, tending to chickens, performing yardwork, woodworking, and walking on her treadmill). Moreover, the record includes other reported activities involving physical exertion that the ALJ did not mention. (Tr. Ex. 8F, p. 623) (noting that Claimant enjoys working on cars); (Tr. Ex. 17F, p. 823) (documenting that Claimant's hobbies include crafting); (Tr. Ex. 17F, p. 827, 829) (reporting that Claimant is in physical pain but often browses the internet, requiring the use of her hands); [Tr. Ex. 17F, p. 966] (stating in the medical record from Claimant's November 17, 2021 appointment that she was up to walking two miles a day on a treadmill, was doing squats, and was performing weighted arm exercises).

  Claimant's reported activities appear to be inconsistent with her allegations of difficulty bending over, left ankle pain, and difficulty gripping with her left hand. Performing yard work and housework, working on cars, and fishing all require the use of both hands and the ability to bend over to some extent. Additionally, though Claimant reports that her left ankle gives out and causes

her pain, she is still able to walk and exercise for relatively long periods of time. Finally, Claimant reports on multiple occasions that she enjoys crafts, including woodworking, which just as some of the other activities noted above, require the ability to manipulate and grip various objects with her hands. While as the ALJ acknowledged, there is proof in the record that Claimant experiences physical difficulties, her reported daily activities are not entirely consistent with her reported limitations and subjective symptoms. Given the above-mentioned medical records and Claimant's reported physical activities, the Court finds that the ALJ was entitled to discount Claimant's subjective symptoms.

IV. CONCLUSION

After a careful review of the entire record in this cause, the Court finds that substantial record evidence supports the ALJ's conclusion that Claimant was not disabled during the relevant timeframe. Given the Court's narrow scope of review, the final decision of the agency is affirmed.

SO ORDERED:

/s/Cynthia Richardson Wyrick
United States Magistrate Judge